IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br>vs.<br>DENZEL CURTIS HODGES,<br>Defendant. | Case No. CR10-2052<br>REPORT AND RECOMMENDATION |

## TABLE OF CONTENTS

I.   INTRODUCTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.  PROCEDURAL HISTORY. . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III. ISSUE PRESENTED. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.  RELEVANT FACTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.   DISCUSSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
     A.  Was Defendant "Seized?". . . . . . . . . . . . . . . . . . . . . . . 4
     B.  Was There Reasonable Suspicion to Justify a Terry-Type Stop?. . . . . 8
     C.  Was the Incriminating Evidence in Plain View?. . . . . . . . . . . . 10

VI.  SUMMARY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

VII. RECOMMENDATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

## I. INTRODUCTION

On the 1st day of April 2011, this matter came on for hearing on the Motion to Suppress (docket number 14) filed by the Defendant on March 23, 2011. The Government was represented by Assistant United States Attorney Rebecca Goodgame Ebinger. Defendant Denzel Curtis Hodges appeared in person and was represented by his attorney, Webb L. Wassmer.

## II. PROCEDURAL HISTORY

On November 17, 2010, Defendant Denzel Curtis Hodges was charged by Indictment with one count of being a felon and illegal drug user in possession of a firearm. At the arraignment on February 23, 2011, Defendant entered a plea of not guilty and trial was scheduled for April 25, 2011. The Court was subsequently notified, however, that Defendant wished to enter a conditional plea of guilty, and a change of plea hearing was held on April 1, 2011, immediately preceding hearing on the instant motion.

On March 23, 2011, Defendant timely filed the instant motion to suppress. The Government filed its resistance on March 30, 2011.

## III. ISSUE PRESENTED

On August 13, 2010, Defendant was approached while sitting in a parked car and, following the discovery of a firearm, was subsequently arrested. Defendant argues that "the stop was in violation of the Fourth Amendment" and, therefore, any evidence resulting from the stop must be suppressed. The Government argues that the Fourth Amendment was not implicated when the officer approached the parked car, the officer's actions were supported by reasonable suspicion in any event, and the firearm was in plain view.

## IV. RELEVANT FACTS

On August 13, 2010, Waterloo Police Officer Spencer Gann was on routine patrol in the downtown area. Gann's regular duties included patrolling the parking lot at the Grand Hotel.[1] While driving by the hotel at approximately 9:30 p.m., Gann could hear loud music coming from the hotel area. According to Gann, loud music is a "common problem" in Waterloo, and complaints have been raised at city council meetings. Gann testified that he has given "frequent" warnings for loud music, and has issued "around five" tickets for that reason.

---

[1] Interestingly, according to Officer Gann, the Grand Hotel was purchased by the City of Waterloo and closed on the day following this incident.

2

After pulling into the hotel parking lot, Officer Gann stopped his squad car near a parked vehicle.[2] There was no driver in the vehicle. Defendant was sitting in the front passenger seat, with the door partially open and his right foot on the ground. Gann testified that Defendant was "doing something with his hands." Upon seeing Gann approach, Defendant "quickly" pulled his foot back in the car and closed the door. According to Gann, he observed "furtive movements" by Defendant "downwards" toward his feet and "backwards" toward the driver's side and back seat. Gann believed Defendant may be putting something "between his legs or underneath the seat."

According to Deputy Gann, Defendant's movements "made me nervous." Accordingly, as he approached, Gann instructed Defendant in an "authoritative voice" to put his hands on the dashboard. Gann had to tell Defendant three times because Defendant apparently could not hear him due to the loud music. Defendant eventually turned down the music and complied with Gann's instructions. During the subsequent interaction, Gann instructed Defendant several times to "keep your hands there."

Officer Gann asked Defendant for identification. Defendant did not have a state-issued identification card, but orally identified himself by giving Gann his name. When asked who was the owner and driver of the vehicle, Defendant responded "Trish." Gann then ran Defendant's name through dispatch for "wants or warrants" and advised Defendant that the music was too loud. While waiting for a response from dispatch, Gann walked around to the driver's side of the vehicle and illuminated the inside of the vehicle with his flashlight.

At about that time, the owner of the vehicle came outside, said it was her car, and asked what was going on. Officer Gann addressed Trish by name and advised her that the music was too loud. When asked by Gann for a consent to search the vehicle, Trish asked how long it would take and said she had to go to work.

---

[2] After stopping his squad car, Deputy Gann activated a video recorder, which recorded the 20 seconds prior to pushing the record button, and the events which followed. The system does not record sound for the initial 20 seconds recorded, but does record the sound after the record button is pushed. A DVD of the recording was introduced as Government's Exhibit 1.

3

During this time, Officer Gann continued to scan the inside of the vehicle with his flashlight. Gann observed a shiny black metal object under the front passenger seat, which he believed was an automatic weapon. At that time, Gann drew his weapon and ordered Defendant out of the vehicle. Defendant was arrested and charged with being a felon and illegal drug user in possession of a firearm.

On cross-examination, Officer Gann testified that in July 2009 he had been shot at by a suspect, Darnell Demory. At Demory's trial in May 2010, Gann testified regarding two officers who had been killed responding to a loud music complaint. Gann denied, however, that he was "thinking about those officers" when he approached the vehicle occupied by Defendant.

## V. DISCUSSION

Defendant argues in his brief that "there was no reasonable, articulable suspicion to approach the vehicle." In response, the Government argues that (1) the Fourth Amendment was not implicated by Officer Gann approaching the vehicle; (2) if a "seizure" occurred, it was supported by reasonable suspicion that criminal activity was afoot; and (3) Officer Gann's observation of a weapon in plain view "provided probable cause to seize Defendant independent from any other actions."

### A. Was Defendant "Seized?"

Initially, the Court must determine whether Defendant was "seized" within the meaning of the Fourth Amendment. The United States Constitution protects persons "against unreasonable searches and seizures." U.S. Const. Amend. IV. However, not all contacts between a law enforcement officer and an individual implicate the Fourth Amendment. The Court's "first task" is to determine "at what point in this encounter the Fourth Amendment becomes relevant." *Terry v. Ohio*, 392 U.S. 1, 16 (1968).

A law enforcement officer is free to approach an individual in public and ask questions. *United States v. Drayton*, 536 U.S. 194, 200 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting

4

questions to them if they are willing to listen."). The contact remains consensual, and no "seizure" occurs, if the person voluntarily stops and responds to the officer's questions. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) ("So long as a reasonable person would feel free 'to disregard the police and go about his business,' the encounter is consensual and no reasonable suspicion is required.") (internal citation omitted).

Clearly, the Fourth Amendment is not implicated by a law enforcement officer simply approaching a parked vehicle and asking questions of the occupants. *United States v. Berry*, 394 F.3d 1070, 1075 (8th Cir. 2005) ("Sergeant Brothers's conduct in approaching Berry's parked vehicle and knocking on the window did not amount to a show of authority such that a reasonable person would believe he was not at liberty to ignore Sergeant Brothers's presence and go about his business."); *United States v. Pajari*, 715 F.2d 1378 (8th Cir. 1983) (a driver of a vehicle was not "seized" until he was ordered to raise his hands and leave his car). Accordingly, Officer Gann did not need "reasonable, articulable suspicion" to simply approach the parked car in which Defendant was a passenger.

In this case, however, Officer Gann did not merely approach the car and ask Defendant to respond to questions. Instead, he immediately instructed Defendant in an "authoritative voice" to place his hands on the dashboard. Furthermore, Gann instructed Defendant several times to "keep your hands there." The "crucial test" in determining whether a seizure has occurred is whether Gann's actions "would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." *Bostick*, 501 U.S. at 437 (quoting *Michigan v. Chesternut*, 486 U.S. 567, 569 (1988)).

In determining whether a seizure has occurred, the Court must consider the totality of the circumstances. *United States v. Munoz*, 590 F.3d 916, 921 (2010). Circumstances suggesting a seizure may include "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be

compelled." *Id.* (quoting *United States v. Flores*, 474 F.3d 1100, 1103 (8th Cir. 2007)). "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." *Id.* (quoting *Chesternut*, 486 U.S. at 573). See also, *United States v. Griffith*, 533 F.3d 979, 983 (8th Cir. 2008)("We consider these matters on a case-by-case basis, as 'no litmus-paper test exists' for distinguishing a consensual encounter from a seizure.").

In *Griffith*, officers observed the defendant and a woman sitting in a car parked in the parking lot of a housing development. The area had a history of attracting drug-related activity and police were under orders to exclude persons who appeared on a "trespass list." 533 F.3d at 981. The officers parked their patrol vehicle approximately 30 feet from defendant's vehicle – in a location which did not block the vehicle from leaving – and approached the occupants. An officer went to the driver's window and spoke with the female driver. The driver's responses to the officer's questions were evasive and, "unsatisfied" with the answers, the officers asked her to exit the vehicle. When the driver appeared to be "irritated," the officer directed her to sit on the curb while he questioned the passenger. *Id.* When the officers initially approached the vehicle, they saw the passenger (the defendant) lean forward "as if putting something under the front seat." *Id.* at 981-82. Accordingly, the officers placed their hands on their weapons and "ordered Griffith to show his hands." One of the officers then approached the window and asked Griffith to identify himself. After it was established that Griffith was on the "trespass list," he was arrested for trespassing. A search of the vehicle discovered a loaded handgun under the passenger's seat.

Griffith filed a motion to suppress alleging, among other things, that he was "seized" without reasonable suspicion. The Court noted that "[d]etermining which police-citizen contacts fall within the protections of the Fourth Amendment and which do not is fact intensive and turns on the unique facts of each case." *Id.* at 983. In denying the motion to suppress, the Court of Appeals agreed with the district court that "the actions

of the officers in connection with the initial encounter were insufficient to lead a reasonable person to believe his liberty was restrained." *Id.*³

Returning to the facts in the instant action, upon approaching the vehicle, Officer Gann was alone, did not display his weapon, and did not physically touch Defendant. However, he immediately instructed Defendant to place his hands on the dashboard. This instruction was given in an authoritative tone of voice, which suggested that Defendant's compliance was required. *United States v. Mendenhall*, 446 U.S. 544, 554 (1980) (suggesting that "an example" of a seizure is "the use of language or tone of voice indicating that compliance with the officer's request might be compelled."). The officer's demeanor or tone of voice is a factor which the Court must consider in determining whether a seizure has occurred. *United States v. Vera*, 457 F.3d 831, 835 (8th Cir. 2006) ("An authoritative order or command to exit a vehicle effects a seizure, while a request – with its implication that the request may be refused – gives 'no indication' that consent is required.") (internal citation omitted).

Here, Officer Gann instructed Defendant in an authoritative voice to put his hands on the dashboard, and told him several times to "keep them there." During a portion of the time, Gann was standing immediately outside the passenger door of the vehicle, thereby blocking Defendant's exit. A reasonable person would not have concluded that he was at liberty to ignore Officer Gann's instruction and "go about his business." *Bostick*, 501 U.S. at 437. Rather, based on the totality of the circumstances, a reasonable person would assume that his compliance with Gann's instruction was required. Obviously, if a person is required to place his hands on the dashboard and "keep them there," then he is "not free to leave." *Mendenhall*, 446 U.S. at 554; *Munoz*, 590 F.3d at 921. Accordingly, I believe that Defendant in this case was "seized" when Officer Gann instructed him to place his hands on the dashboard. *United States v. Flores-Sandoval*,

---

³ It should be noted, however, that the Court also concluded that "the officers were warranted in expanding the scope of the encounter to a *Terry* stop." The opinion is imprecise as to when the events transitioned from a consensual encounter to a *Terry* stop.

474 F.3d 1142, 1145 (8th Cir. 2007)("A seizure occurs when the officer, 'by means of physical force or show of authority has in some way restrained the liberty' of a suspect.")(quoting *Terry*, 392 U.S. at 19.).

### B. Was There Reasonable Suspicion to Justify a Terry-Type Stop?

To justify a *Terry*-type stop, an officer must have a reasonable, articulable suspicion that criminal activity is afoot. *Terry*, 392 U.S. at 30. Here, following a thorough analysis of Waterloo City Ordinance 4-5-4, Defendant argues that "there was no reasonable, articulable suspicion that Mr. Hodges was violating Waterloo's Noise Control Ordinance."[4] The Government argues that Officer Gann had a reasonable suspicion that section 417 of Waterloo's Traffic Code was being violated. The Government also asserts that "defendant's furtive movements provided additional suspicion that criminal activity was afoot."[5]

In his brief, Defendant relies exclusively on his argument that there was no reasonable basis to believe that Waterloo City Ordinance 4-5-4 was being violated.[6] The Noise Control Ordinance prohibits, among other things, playing any car radio "in such a manner as to create a noise level" of 80 decibels, when measured at 25 feet from a vehicle "on a public right of way or public space." Defendant asserts that he "was not playing any radio in excess of 80 decibels at 25 feet from the radio."[7] Accordingly, Defendant argues that "there was no reasonable, articulable suspicion to approach the vehicle."

I believe it is unnecessary to engage in a detailed analysis of Ordinance 4-5-4, however, for a simple reason. Officer Gann was not relying on a belief that the noise emanating from the vehicle violated Ordinance 4-5-4, but rather believed that there was

---

[4] *See* Defendant's Brief (docket number 14-1) at 6.

[5] *See* Government's Memorandum (docket number 20-1) at 5.

[6] A copy of the City's "Noise Control Ordinance" was attached to Defendant's motion as Exhibit 1.

[7] *See* Defendant's Brief (docket number 14-1) at 6.

a violation of section 417 of the Waterloo Traffic Code. The section upon which Gann was relying states:

> It shall be unlawful for any person to disturb or aid in disturbing the peace or quiet by operating or causing to be operated any radio, tape player, compact disk player, loudspeaker, or any other electronic device, or by blowing of horns or the squealing of tires either in a motor vehicle or separate therefrom so as to produce an audible sound measured at least twenty-five (25) feet from the source. Measure of the audible sound shall be by auditory senses based upon direct line of sight.
>
> No distinction shall be made between stopped, standing, parked, or moving motor vehicles.
>
> Upon conviction or a plea of guilt, the violator shall be punished as a simple misdemeanor and as follows: for the first offense, no less than One Hundred Dollars ($100.00); for the second offense, no less than Two Hundred Fifty Dollars ($250.00); and for the third and any subsequent offenses, Five Hundred Dollars ($500.00).

*See* 2008 Traffic Code, section 417. (Government's Exhibit 2.)

Accordingly, the issue is whether Officer Gann had a reasonable suspicion that Defendant was disturbing the peace or quiet, or aiding in disturbing the peace or quiet, by operating a car radio which produced "an audible sound" at least 25 feet from the source. Gann testified that as he drove past the Grand Hotel on the public street, he "could hear music coming from the general hotel area." Gann estimated that he "was around 80 feet away" when he first heard the music. According to Gann, he believed that the level of music coming from the area violated the traffic code. The Court finds that Gann's testimony was credible. Upon entering the parking lot, Gann determined that the sound was coming from the car occupied by Defendant.

As set forth above, Officer Gann did not need any reason to simply approach a parked car and engage its occupants in conversation, if they were willing to listen. To "seize" Defendant, however, Gann must have a reasonable, articulable suspicion that

criminal activity is afoot. *Terry*, 392 U.S. at 30. Playing loud music may not be a serious offense, but it is, nonetheless, a violation of the Waterloo Traffic Code. Here, Officer Gann heard loud music while driving past the hotel at a distance of 80 feet. Accordingly, the Court finds that Gann had "a reasonable, articulable suspicion" that the occupants of the vehicle in the parking lot were violating the Waterloo Traffic Code.[8] Accordingly, Gann was authorized to conduct a *Terry*-type stop.

### C. Was the Incriminating Evidence in Plain View?

The Government argues that the foregoing discussion is largely irrelevant, since the firearm was observed in plain view by Officer Gann, while the officer was in a position where he was lawfully entitled to be.[9] The Court agrees. Gann's discovery of the firearm was unrelated to his "seizure" of Defendant.

"The plain-view doctrine permits law enforcement officers to seize evidence without a warrant if '(1) the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed, (2) the object's incriminating character is immediately apparent, and (3) the officer has a lawful right to access to the object itself.'" *United States v. Hatten*, 68 F.3d 257, 260 (8th Cir. 1995) (quoting *United States v. Hughes*, 940 F.2d 1125, 1126-27 (8th Cir. 1991)). To satisfy the first element, all that is required is that Officer Gann "must have had a right to be in close proximity to the car at a point from which the observation occurred." *Id.* (quoting *United States v. Webb*, 533 F.2d 391, 394 (8th Cir. 1976)).

---

[8] The Supreme Court has recognized that "the concept of reasonable suspicion is somewhat abstract." *United States v. Arvizu*, 534 U.S. 266, 274 (2002). "Articulating precisely what 'reasonable suspicion' and 'probable cause' mean is not possible. They are commonsense, non-technical conceptions that deal with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" *Ornelas v. United States*, 517 U.S. 690, (1996) (quoting *Illinois v. Gates*, 462 U.S. 213, 231 (1983)). The reasonable suspicion standard is "a less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence," but requires "at least a minimal level of objective justification for making the stop." "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch' of criminal activity." *Id.* at 123-24.

[9] Defendant did not reply to the Government's argument in this regard.

Here, the car occupied by Defendant was parked in a parking lot accessible to the public. The Grand Hotel was located in "a high crime area" and, as part of his duties, Gann regularly patrolled the parking lot. Gann did not violate the Fourth Amendment by looking through Defendant's car window. *Id.* at 261 (looking in a car window is not a search "because a person who parks a car – which necessarily has transparent windows – on [another person's] private property does not have a reasonable expectation of privacy in the visible interior of his car."). It does not matter that Gann used a flashlight. *Id.*

Standing in a position where he was lawfully entitled to be, Officer Gann observed a handgun sticking out from under the passenger's seat. The incriminating nature of the firearm was immediately apparent. *See* Iowa Code section 724.4 (prohibiting transporting a handgun in a vehicle, with certain exceptions not applicable here). Upon the discovery of the firearm, Gann had probable cause to place Defendant under arrest and seize the firearm. I believe that the elements of the plain-view doctrine have been satisfied, and the firearm is admissible in evidence independently of Defendant's "seizure." *United States v. Bynum*, 508 F.3d 1134, 1137 (8th Cir. 2007) ("It is settled that an officer, without a warrant, may seize an object in plain view provided the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object.") (quoting *United States v. Bustos-Torres*, 396 F.3d 935, 944 (8th Cir. 2005)).

### VI. SUMMARY

In summary, the Court concludes that the Fourth Amendment was not implicated when Officer Gann "approached the vehicle" to engage the occupants in a consensual encounter. However, Defendant was "seized" for Fourth Amendment purposes when Gann instructed Defendant to put his hands on the dashboard and keep them there. This *Terry*-type stop was justified, however, by Gann's reasonable, articulable suspicion that the occupant of the vehicle was violating the noise restrictions found in the Waterloo

Traffic Code.[10] In any event, Gann's discovery of the firearm was not the result of his "seizure" of Defendant. Rather, while engaging the driver in conversation upon her return to the vehicle, Gann observed the firearm in plain view from his vantage point outside the car. I cannot find any constitutional violation here.

## VII. RECOMMENDATION

For the reasons set forth above, it is respectfully recommended that the Motion to Suppress (docket number 14) filed by the Defendant be **DENIED**.

The parties are advised, pursuant to 28 U.S.C. § 636(b)(1), that within fourteen (14) days after being served with a copy of this Report and Recommendation, any party may serve and file written objections with the district court. *The parties are reminded that pursuant to Local Rule 72.1, "[a] party asserting such objections must arrange promptly for a transcription of all portions of the record the district court judge will need to rule on the objections." Accordingly, if the parties are going to object to this Report and Recommendation, they must promptly order a transcript of the hearing held on April 1, 2011.*

DATED this 14th day of April, 2011.

JON STUART SCOLES
UNITED STATES MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[10] While it is presumably not common to order all occupants of a vehicle to place their hands on the dashboard, Officer Gann issued his instruction here because he observed furtive movements, and Defendant appeared to be putting something between his legs or underneath the seat.

12